

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

**ENTERED**
**01/10/2013**

| | | |
|---|---|---|
| In Re: | § | |
| | § | Case No. 10-33933-H2-11 |
| GULF COAST GLASS | § | |
| & ERECTION CO., INC., | § | |
| | § | |
| Debtor | § | Chapter 11 |
| | § | |

| | | |
|---|---|---|
| STEVE SHURN, | § | |
| | § | |
| Liquidating Trustee/Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 12-03145 |
| | § | |
| BOBBY G. GILBERT, SR. | § | |
| | § | |
| Defendant | § | |

**MEMORANDUM OPINION ON THE PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND THE DEFENDANT'S RESPONSE TO TRUSTEE'S MOTION FOR
SUMMARY JUDGMENT**
[Adv. Doc. Nos. 33 & 34]

I.   INTRODUCTION

Steve Shurn (the Liquidating Trustee) of the Gulf Coast Glass & Erection Co., Inc. d/b/a

Vision Products & Design Creditors Liquidating Trust (the Liquidating Trust) brings this Motion

for Summary Judgment. The Liquidating Trustee alleges that under 11 U.S.C § 547, $26,700

transferred to Bobby G. Gilbert, Sr. (Gilbert) before Gulf Coast Glass & Erection Co., Inc. (the

Debtor) filed for bankruptcy is an avoidable preferential transfer.

The Court issues this Memorandum Opinion to address Gilbert's argument in response.

Gilbert contends that by granting him an allowed claim of $225,000 (Allowed Claim) in the

confirmed Second Liquidating Chapter 11 Plan (the Plan), 11 U.S.C. § 502(d) operates to destroy

the Liquidating Trustee's right to pursue any voidable transfer actions.  Section 502(d)[1] states that "the court shall disallow any claim of any entity . . . [that is] a transferee of a transfer avoidable under section  . . . 547 . . . of this title, unless such entity or transferee has paid the amount, or turned over any such property . . . ." The interpretation of this section is a novel issue in the Fifth Circuit.  Gilbert argues that this Court should adopt the minority interpretation, and hold that § 502(d) extinguishes any preferential actions against a creditor once that creditor's claim is allowed.  This interpretation, however, has been highly criticized, and this Court finds that arguments in favor of the majority rule are more practical and reasoned.  The Court therefore declines to adopt the minority approach to § 502(d).

Finally, because the Liquidating Trustee has established each element under 11 U.S.C. § 547(b), there are no genuine issues of material fact remaining.  Accordingly, the Court concludes that the Liquidating Trustee's Motion for Summary Judgment should be granted.  Based upon the entire record, the Court now makes the following written Findings of Fact and Conclusions of Law pursuant to FED. R. CIV. P. 52, as incorporated into adversary proceedings by FED. R. BANKR. P. 7052.[2]

## II.    FINDINGS OF FACT

1.  From May 18, 2009 to April 30, 2010, Gilbert received the following payments from the Debtor's bank account held at Amegy Bank (the Preferential Transfers):

---

[1] Any reference to "the Code" refers to the United States Bankruptcy Code, and reference to any section (i.e., §) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code unless otherwise noted. Further, any reference to "the Bankruptcy Rules" refers to the Federal Rules of Bankruptcy Procedure.

[2] To the extent that any Finding of Fact is construed to be a Conclusion of Law, it is adopted as such.  To the extent that any Conclusion of Law is construed to be a Finding of Fact, it is adopted as such.  The Court reserves the right to make any additional Findings and Conclusions as may be necessary or as requested by any party.

| Transfer No. | Date | Amount | Check No. |
|---|---|---|---|
| 1 | 5/18/09 | $2,225.00 | 27513 |
| 2 | 07/27/09 | $2,225.00 | 9075 |
| 3 | 07/27/09 | $2,225.00 | 9120 |
| 4 | 08/24/09 | $2,225.00 | 9452 |
| 5 | 09/18/09 | $2,225.00 | 9690 |
| 6 | 10/22/09 | $2,225.00 | 9928 |
| 7 | 12/04/09 | $2,225.00 | 10231 |
| 8 | 01/14/10 | $2,225.00 | 10463 |
| 9 | 01/19/10 | $2,225.00 | 10395 |
| 10 | 02/17/10 | $2,225.00 | 10710 |
| 11 | 03/30/10 | $2,225.00 | 10884 |
| 12 | 04/30/10 | $2,225.00 | 11052 |

[Adv. Doc. No. 33 at p. 3–4, ¶ 6].

2.  Gilbert is the father of Bobby Gilbert, Jr. who is married to Lori Ellis.  Both Lori Ellis and Bobby Gilbert Jr. were officers of the Debtor at the time the Preferential Transfers were made.  [*Id.* at p. 4, ¶ 7]; [Adv. Doc. No. 11]; [Adv. Doc. No. 15 at p. 2–3, ¶ 5].

3.  The Preferential Transfers were in payment for a debt to Gilbert, which was an antecedent debt owed before the Preferential Transfers were made.  [Adv. Doc. No. 11]; [Adv. Doc. No. 15 at p. 2–3, ¶ 5].  The Preferential Transfers were also made while the Debtor was insolvent.[3]  [Adv. Doc. No. 33, Ex. D].

---

[3] Section 547(f) of the Bankruptcy Code provides that, for purposes of avoiding a preferential transfer, "the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition [in bankruptcy]." The Fifth Circuit has interpreted this presumption to mean that the creditor against whom the preference action is brought must come "forward with evidence to rebut or meet the presumption".  *In re Emerald Oil Co.*, 695 F.2d 833, 837–38 (5th Cir. 1983).  However, the Fifth Circuit has made clear:  this does *not*

4. On May 7, 2010, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. [Main Case Doc. No. 1]. Thus, all of the Preferential Transfers were made within one year before the Debtor filed its bankruptcy petition.

5. On October 12, 2010, Gilbert filed an unsecured proof of claim in the amount of $447,225.00, to which the Debtor did not object. [Main Case Claim No. 57].

6. On June 28, 2011, the Liquidating Trustee filed the Plan. [Main Case Doc. No. 359].

7. On July 15, 2011, Gilbert filed an objection to the confirmation of the Plan. Gilbert asserted that the Plan proposed treatment of his claim which favored the other unsecured creditors, and that the Liquidating Trustee had given Gilbert different treatment "to gerrymander affirmative votes." [Main Case Doc. No. 377].

8. The parties entered negotiations and came to an agreement (the Settlement Agreement). On August 8, 2011, the Court entered a confirmation order (the Order), which resolved the objections made by Gilbert and other parties, and also confirmed the Plan. [Main Case Doc. No. 399-1]. Gilbert's attorney, among others, expressly signed the Order.

9. In Paragraph 19 of the Order, the Court found that:

> Class 7 consists of the Allowed Claim of Bobby Gilbert, Sr. The Plan provides that the Class 7 Claim shall receive no distribution under the Plan. The Class 7 Claim is impaired and filed an objection to the plan and rejected the Plan. Prior to the confirmation hearing, an agreement was

---

mean that the burden shifts to him. *Id.* Rather, the burden remains against the party (here, the Liquidating Trustee) who had the original burden to prove insolvency in order to avoid a transfer as preferential. *Id.*

Under this Fifth Circuit standard, the Liquidating Trustee met his burden by attaching an affidavit sworn by William A. Potter (Potter), a Certified Public Accountant and expert in bankruptcy, liquidation and insolvency, to the Motion for Summary Judgment. In the affidavit, Potter has asserted that the Debtor was insolvent at the time of the Preferential Transfers. [Adv. Doc. No. 33, Ex. D].

Gilbert did not attach a counter affidavit to his response in opposition. In fact, Gilbert did not attach any exhibits to his response asserting that the Debtor was *not* insolvent at the time of the Preferential Transfers. Gilbert has therefore failed to come "forward with evidence to rebut or meet the presumption." *In re Emerald Oil Co.*, 695 F.2d at 837–38. Accordingly, the Court finds that the Debtor was insolvent at the time of the Preferential Transfers.

reached between the parties resolving the objection and which provides for the following treatment of the Class 7 Claims of Bobby Gilbert, Sr.:

i)      Bobby Gilbert Sr. shall be allowed a claim in the amount of $225,000 [i.e., the Allowed Claim], which shall not limit or affect any non-debtor, also liable on the debt due Bobby Gilbert, Sr.;

ii)     The Class 7 Allowed Claim shall be paid a total of 75% (the same treatment as the Class 4 Allowed Claims), without interest in the manner provided below;

iii)    The Class 7 Allowed Claim shall remain subordinated to the SBA Note with Amegy Bank in accordance with the Subordination Agreement executed by Bobby Gilbert, Sr.;

iv)     The holder of the Class 7 Allowed Claim shall receive no distribution of any kind on the Class 7 Allowed Claim until such time as Amegy Bank has confirmed in writing that the SBA Note has been paid in full;

v)      The holder of the Class 7 Allowed Claim shall not be entitled to take any action to enforce the Class 7 Allowed Claim until such time that it is confirmed in writing that the SBA Note is paid in full;

vi)     Sixty (60) days after written confirmation from Amegy Bank that the SBA Note has been paid in full, which is expected to be 60 months after the Effective Date, Purchaser shall commence making equal monthly payments to Gilbert, Sr. with respect to his Class 7 Allowed Claim, in an amount sufficient to pay 75% of the Class 7 Allowed Claim by no later than the maturity date of Creditor Trust Promissory Note which is January 12, 2020;

vii)    Except for the Class 7 Allowed Claim, Bobby Gilbert, Sr. shall have no other allowed claims against the Debtor or Purchaser; and

viii)   Nothing herein or in the Plan affects the guaranty executed by Bobby Gilbert, Jr. in favor of Bobby Gilbert, Sr.

In accordance with the above agreement, Bobby Gilbert Sr., the holder of a Class 7 Claim, withdrew his objection and voted to accept the Plan.

[Main Case Docket No. 399 at p. 5–7, ¶ 19].

10. In Paragraph 53 of the Order, the Court held that:

The Plan is modified to incorporate the treatment of Class 7 as set forth in ¶ 19 hereof and this Order supersedes the Plan with regard to the treatment of Class 7. The treatment of Class 7 Allowed Claim of Bobby Gilbert Sr. set forth herein above is approved and Bobby Gilbert Sr. has no claims against the Purchaser or Debtor.

[*Id.* at p. 14, ¶ 53].

11. Paragraph 37 of the Order states that "the Plan be authorized and approved in its entirety," [*Id.* at p. 10, ¶ 37], and the Plan was attached to the Order [Main Case Doc. No. 399-2].

12. The Plan reserves to the Liquidating Trustee the right to pursue certain enumerated reserved avoidance actions listed in the attached Exhibit C of the Plan. [Main Case Doc. No. 399-1 at p. 24, ¶ 8.2].

13. The attached Exhibit C lists $31,216.08 in pre-petition transfers made by the Debtor to Gilbert, including the Preferential Transfers. [Main Case Doc. No. 399-2 at p. 33]. The Preferential Transfers, which total $26,700, constitute the majority of the pre-petition transfers listed in Exhibit C.[4] The Plan also provides that "the Liquidating Trustee shall prosecute the Reserved Avoidance Actions [including the Preferential Transfers] against the parties listed in Exhibit 'C,' attached hereto." [Main Case Doc. No. 399-1 at p. 23]. Under the Plan, the Liquidating Trustee thereby reserved the right to pursue actions to recover $31,216.08 (the Reserved Avoidance Actions), including the $26,700 in the Preferential Transfers.[5]

14. Paragraph 34 of the Order expressly releases several parties "from any and all causes of action held by the Debtor." [*Id.* at p. 10]. The release includes any preference actions

---

[4] It is unclear from the record why the Liquidating Trustee chose to only pursue $26,700 of the pre-petition transfers, when the Plan reserved the right for the Liquidating Trustee to pursue $31,216.08 in pre-petition transfers from the Debtor to Gilbert.

[5] To clarify, the "Reserved Avoidance Actions" refers to the right given to the Liquidating Trustee in the Plan to pursue actions to recover the full $31,216.08 in pre-petition transfers, including the Preferential Transfers. The "Preferential Transfers" refers to the twelve specific pre-petition transfers (totaling $26,700) from the Debtor to Gilbert that the Liquidating Trustee is pursuing in the Motion for Summary Judgment presently pending before this Court.

that the Plan may have originally reserved in Exhibit C against these parties.  Gilbert, however, is not among the parties expressly released in Paragraph 34 of the Order.  [*Id.*].

15. Finally, Article 4 of the Plan, entitled "Classification and Treatment of Claims and Interests," details the modifications to the Plan made in the Order. [Main Case Doc. No. 399-1 at p. 12].  No modifications were made to the Reserved Avoidance Actions.

16. On March 13, 2012, the Liquidating Trustee made a demand on Gilbert to immediately return the Preferential Transfers sum of $26,700 to the Liquidating Trust (the March 13, 2012 Demand Letter).  [Adv. Doc. No. 33, Ex. F].[6]  Gilbert did not pay the $26,700 after the Liquidating Trustee made the demand.

17. On March 19, 2012, the Liquidating Trustee initiated the pending adversary proceeding against Gilbert seeking to recover the Preferential Transfers.  In his initial complaint, the Liquidating Trustee sought recovery of the Preferential Transfers and reconsideration and disallowance of Gilbert's Allowed Claim unless and until Gilbert pays the Liquidating Trustee the Preferential Transfers.  [Adv. Doc. No. 1].  Gilbert filed an Answer on April 27, 2012.  [Adv. Doc. No. 9].

18. The Liquidating Trustee filed an amended complaint on May 1, 2012.  [Adv. Doc. No. 11].  Gilbert filed an Answer to this amended complaint on May 17, 2012.  [Adv. Doc. No. 15

---

[6] To the Motion for Summary Judgment, the Liquidating Trustee attached an affidavit sworn by Rhonda Chandler (Chandler), attorney for the Liquidating Trustee, as well as a copy of the March 13, 2012 Demand Letter.  [Adv. Doc. No. 33, Ex. F].  In her affidavit, Chandler swears that she sent the March 13, 2012 Demand Letter to Gilbert on behalf of the Liquidating Trustee.  [*Id.*].

    To his response, Gilbert did not attach an affidavit contraverting any of the statements made by Chandler in her affidavit.  Thus, Gilbert does not refute (1) that he received the March 13, 2012 Demand Letter, or (2) that he failed to pay the funds requested in the March 13, 2012 Demand Letter to the Liquidating Trust.  Accordingly, the Court finds that Gilbert never paid the $26,700 demanded in the March 13, 2012 Demand Letter.

19. Additionally, on May 17, 2012, Gilbert filed a motion for summary judgment. [Adv. Doc. No. 17]. Gilbert maintained that (1) the Order superseded the Plan and did not expressly preserve the claims that the Liquidating Trustee has brought against him to recover the Preferential Transfers; and (2) the Order is *res judicata* as to the Liquidating Trustee's right to bring the Reserved Avoidance Actions. [*Id.*]. The Liquidating Trustee filed a response opposing Gilbert's motion for summary judgment. [Adv. Doc. No. 18].

20. After hearing oral arguments by both parties, this Court issued a Memorandum Opinion (the Memorandum Opinion). *In re Gulf Coast Glass & Erection Co., Inc.*, No. 10–33933–H2–11, Adv. No. 12–03145, 2012 WL 2994473 (Bankr. S.D. Tex. July 20, 2012). In the Memorandum Opinion, the Court denied Gilbert's motion for summary judgment. *Id.* at *6. This Court found that the Order did not affect or even comment on the section of the Plan that expressly allows the Liquidating Trustee to pursue the Reserved Avoidance Actions against Gilbert. *Id.* at *4. Rather, the modifications made to the Plan contained in the Order only dealt with Gilbert's Allowed Claim and its treatment, and the Plan includes an express right to pursue the Reserved Avoidance Actions against Gilbert. *Id.* at *5–6. Thus, at the time the Court issued the Memorandum Opinion genuine issues of material fact remained, including each of the elements under 11 USC § 547, which governs preferential avoidance actions. *Id.* at *6.

21. On November 28, 2012, the Liquidating Trustee filed the pending Motion for Summary Judgment against Gilbert. [Adv. Doc. No. 33]. The Liquidating Trustee now argues that under 11 USC § 547(b), there are no genuine issues of material fact, and that the transfers totaling $26,700 made to Gilbert by the Debtor during the one year prior to the Debtor's bankruptcy (i.e., the Preferential Transfers) are avoidable under § 547(b).

22. On December 21, 2012, Gilbert filed a response. [Adv. Doc. No. 34]. In his response, Gilbert makes three arguments. First, only the Plan reserved the Reserved Avoidance Actions; the Order did *not*, and as such, the Order is *res judicata* as to all of those issues. The Liquidating Trustee, therefore, lacks standing to pursue a § 547 claim against Gilbert. Second, avoiding the Preferential Transfers and allowing the Allowed Claim under the Plan would be a violation of 11 USC § 502(d). If the Preferential Transfers are avoided, then the Settlement Agreement is being ignored, and the entirety of the Settlement Agreement must be unwound. As a result, the Plan and Order must also be vacated. Third, Gilbert did not receive more than he would have received if no transfers occurred, and if a hypothetical Chapter 7 case was filed. [*Id.* at p. 7, ¶ 14]. The Allowed Claim amount of $225,000 was reduced from Gilbert's originally filed $447,225 proof of claim and this reduction was in recognition—at least in part—of the money that Gilbert had already received from the Preferential Transfers. [*Id.*]. Thus, according to Gilbert, the Liquidating Trustee has failed to establish the final required element under 11 U.S.C. § 547(b).

23. On December 31, 2012, the Liquidating Trustee filed a reply arguing that Gilbert's response fails to object to *any* of the Liquidating Trustee's summary judgment evidence. [Adv. Doc. No. 35].[7] The reply reiterates that the Liquidating Trustee has satisfied the all elements under § 547(b). [*Id.*].

---

[7] To his Motion for Summary Judgment, the Liquidating Trustee attached six exhibits, including two affidavits. Conversely, to his response, Gilbert did not attach any exhibits or evidence.

III.   CONCLUSIONS OF LAW

**A.  Jurisdiction and Venue**

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a).   This particular dispute is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F) and (O), and the general "catch-all" language of 28 U.S.C. § 157(b)(2).  *See In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it involves a substantive right provided by title 11 or if it is a proceeding that, by its nature, could only arise in the context of a bankruptcy case."); *De Montaigu v. Ginther (In re Ginther Trusts)*, Adv. No. 06-3556, 2006 WL 3805670, at *19 (Bankr. S.D. Tex. Dec. 22, 2006) (holding that an "[a]dversary [p]roceeding is a core proceeding under 28 U.S.C. § 157(b)(2) even though the laundry list of core proceedings under § 157(b)(2) does not specifically name the particular circumstance.").  This proceeding is core because a preference action only arises under the Code. Venue is proper pursuant to 28 U.S.C. § 1409.

**B.  Constitutional Authority to Enter a Final Order**

The Supreme Court's decision in *Stern v. Marshall* recognized certain limitations on bankruptcy courts' authority to enter a final order.  131 S. Ct. 2594 (2001).  This Court must therefore evaluate whether it has the constitutional authority to sign a final order regarding the motion for summary judgment.    In *Stern*, the Supreme Court held that 28 U.S.C. § 157(b)(2)(C)—which authorizes bankruptcy judges to issue final judgments in counterclaims by a debtor's estate against entities filing claims against the estate—is an unconstitutional delegation of Article III authority to bankruptcy judges.  *Id.* at 2616.  This is true at least when the counterclaim being adjudicated is based solely on state common law and does not affect the claims adjudication process.  *Id.*

10

The matter at bar is not a counterclaim of the Debtor's estate based solely on state law. Rather, this matter arises from an express bankruptcy provision: 11 U.S.C. § 547. The issues and the related requested relief (i.e., avoidance of pre-petition preferential transfers) are available only under bankruptcy law. There is no state law involved in the matter before this Court. This suit is therefore easily distinguishable from the matter at issue in *Stern*.

Moreover, courts have held that because preference actions are "so closely integrated into the public bankruptcy scheme," the Supreme Court's holding in *Stern v. Marshall* is not applicable to these types of claims. *West v. Freedom Med., Inc. (In re Apex Long Term Acute Care-Katy, L.P.)*, 465 B.R. 452, 468 (Bankr. S.D. Tex. 2011); *see also Penson Fin. Servs. v. O'Connell (In re Arbco Capital Mgmt., LLP)*, 479 B.R. 254, 265 (Bankr. S.D.N.Y. 2012); *Murphy v. Felice (In re Felice)*, 480 B.R. 401, 428 (Bankr. D. Mass. 2012). Stated differently, preference actions may be finally adjudicated by non-Article III bankruptcy courts even without a *Stern* analysis. *In re Apex Long Term Acute Care-Katy, L.P.*, 465 B.R. at 468; *In re Garrett-Beck Corp.*, No. 09-37774, 2012 Bankr. LEXIS 3911, at *2 (Bankr. S.D. Tex. Aug. 27, 2012). Accordingly, for these separate and distinct reasons, this Court concludes that it has the constitutional authority to enter a final order.

### C. Summary Judgment Standard of Review

Federal Rule of Civil Procedure 56(c) applies to this proceeding pursuant to Federal Rule of Bankruptcy Procedure 7056(c). Rule 56(c) provides that summary judgment is appropriate when the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). If a reasonable fact-finder could enter a verdict for the non-moving party, then there is a genuine issue of material fact remaining. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323

(1986). The moving party carries the burden of proof and must therefore show the absence of genuine material issues. *Id.* All reasonable inferences are to be drawn in the non-moving party's favor. *Id.*

### D. The Liquidating Trustee May Pursue the Reserved Avoidance Actions, and Has Met the Burden of Proof to Establish Each Element Under 11 U.S.C. § 547(b).

1. The Settlement Agreement, the Plan, and the Order Reserved the "Reserved Avoidance Actions" and Are Not *Res Judicata* of the Issues Now Before this Court

In the Motion for Summary Judgment pending before this Court, the Liquidating Trustee asserts that $26,700 transferred in twelve separate transfers to Gilbert by the Debtor during the one year prior to the Debtor's bankruptcy are avoidable preferences under 11 USC § 547(b). [Adv. Doc. No. 33 at p. 3, ¶ 6]. Gilbert, however, argues that the Reserved Avoidance Actions that the Liquidating Trustee is pursuing are barred by *res judicata*. [Finding of Fact No. 22]. According to Gilbert, the Order incorporated the Settlement Agreement, thereby superseding the Plan, and as only the Plan expressly reserved the right to pursue the Reserved Avoidance Actions under § 547, the Liquidating Trustee lacks standing to bring this matter. [*Id.*].

This Court has already addressed and rejected this argument in the Memorandum Opinion. [Finding of Fact No. 20]; [Adv. Doc. No. 20 at p. 7–8]. The Memorandum Opinion concluded that the Order does not comment, deal with, or change the section of the Plan that expressly reserves the Reserved Avoidance Actions. [Finding of Fact No. 20]. The Order did not supersede this portion of the Plan. [*Id.*]. This Court's conclusion has not changed now that the Liquidating Trustee is indeed seeking to recover the Preferential Transfers.

12

2. <u>Avoiding the Preferential Transfers While Also Deeming Gilbert to Hold an Allowed Claim of $225,000 Under the Order is Not a Violation of 11 USC § 502(d)</u>

**a. Gilbert Argues for the Minority Interpretation of § 502(d)**

Gilbert argues that granting the Liquidating Trustee's § 547 claim (thereby avoiding the Preferential Transfers) <u>as well as</u> permitting Gilbert's Allowed Claim under the Order would be a violation of 11 USC § 502(d). [Finding of Fact No. 22] (citing Gilbert's argument in his response). This section states that, "the court shall disallow any claim of any entity . . . [that is] a transferee of a transfer avoidable under section . . . 547 . . . of this title, unless such entity or transferee has paid the amount, or turned over any such property . . ." According to Gilbert, this language means that "there is no way for the Court's order requiring payment of 75% of [the] Allowed Claim to co-exist with the provisions of 11 U.S.C. §502(d)," and that, by its existence, the Allowed Claim defeated the portions of the Plan which reserved the Reserved Avoidance Actions. [Adv. Doc. No. 34 at p. 11, ¶ 23]; *see also* [Finding of Fact No. 22] (citing Gilbert's argument in his response).

There is a split of authority regarding the meaning and the timing of the application of § 502(d). Case law favorable to Gilbert's position includes *LaRoche Indus., Inc. v. General American Transportation Corp. (In re LaRoche Indus., Inc.*), 284 B.R. 406 (Bankr. D. Del. 2002) and *Caliolo v. TKA Fabco Corp. (In re Cambridge Indus. Holdings, Inc.),* No. 00–1919, 2003 WL 1818177 (Bankr. D. Del. Apr. 2, 2003). For its part, *LaRoche* found that a preference action is part and parcel of the claims allowance process. 284 B.R. at 409 (quoting *Katchen v. Landy,* 382 U.S. 323, 330–31 (1966)). A voidable transfer, such as a preference, therefore, *must* be determined as part of the claims process, not at a later time. *Id.* at 408–09. If a claim is allowed then, in essence, there is no longer a voidable transfer to pursue. *Id.*

13

The *Cambridge* court agreed, using *LaRoche* to prevent a creditor from "sandbagging" and "objecting to and obtaining a stipulated order allowing the claim in a reduced amount," and then after the claim objection was resolved, "commencing an adversary proceeding alleging that the creditor received an avoidable preference."   *In re Cambridge Indus. Holdings, Inc.,* 2003 WL 1818177, at *2.  The rationale for this ruling and the *LaRoche* decision was one of fairness: "All matters concerning a creditor's claim should be resolved at one time," because "[i]t is clearly inequitable to allow a debtor to object to a claim while concealing a cause of action for a preference."  *In re LaRoche Indus., Inc.,* 284 B.R. at 410; *In re Cambridge Indus. Holdings, Inc.,* 2003 WL 1818177, at *2.

Using this reasoning, Gilbert argues that the parties settled the Reserved Avoidance Actions in the Settlement Agreement and during the claims resolution process.  [Finding of Fact No. 22] (citing Gilbert's argument in his response).  By granting Gilbert the Allowed Claim of $225,000 in the resulting Order, the parties thereby resolved—and eradicated—the Liquidating Trustee's rights to pursue any of the Reserved Avoidance Actions, including the Preferential Transfers.  [*Id.*].  According to Gilbert, "[t]he parties in settling considered the preference action as part and parcel of the claims allowance process."  [Adv. Doc. No. 34 at p. 12–13, ¶ 26] (quoting *In re LaRoche Indus., Inc.,* 284 B.R. at 409).  Having resolved these issues, Gilbert now argues that it would be unfair to allow the Liquidating Trustee to pursue the Reserved Avoidance Actions.  [Finding of Fact No. 22] (citing Gilbert's argument in his response).

### b.  This Court Adopts the Majority Interpretation of § 502(d)

The Court disagrees with Gilbert's argument for two reasons.  First, in the Memorandum Opinion, this Court has already found that the Order expressly reserved, but *did not itself resolve,* the Reserved Avoidance Actions.  [Finding of Fact No. 20].  In fact, the Memorandum Opinion

concluded that the elements of a § 547(b) action remained at issue. [*Id.*]. Thus, even under *LaRoche/Cambridge,* it would not be unfair to pursue a § 547 claim to recover the Preferential Transfers; the Order expressly reserved the Reserved Avoidance Actions. [*Id.*]. Thus, Gilbert has not been "sandbagged," as the Debtor and Liquidating Trustee did not conceal the cause of action for the Preferential Transfers at the time the parties resolved the Allowed Claim.

Second, *LaRoche* and *Cambridge* have been highly criticized even by fellow Delaware courts, and the contrary reasoning is, in fact, the majority rule. *AFD Fund v. Transmed Foods, Inc. (In re AmeriServe Food Distrib., Inc.)*, 315 B.R. 24, 34 (Bankr. D. Del. 2004); *In re Polaroid Corp.*, No. 01-10864(PJW), 2004 Bankr. LEXIS 841 (Bankr. D. Del. June 22, 2004); *In re TWA Inc. Post Confirmation Estate*, 305 B.R. 221, 226–27 (Bankr. D. Del. 2004); *Rhythms NetConnections Inc. v. Cisco Sys. (In re Rhythms Netconnections Inc.)*, 300 B.R. 404, 408 (Bankr. S.D.N.Y. 2003); *Peltz v. Gulfcoast Workstation Group (In re Bridge Information Sys., Inc.)*, 293 B.R. 479, 487–88 (Bankr. E.D. Mo. 2003). While the Fifth Circuit has not analyzed this issue, this Court adopts this majority reasoning because, as discussed below, this rule seems both more reasonable and more cognizant of the realities of the plan confirmation process.

> i.   The LaRoche/Cambridge *Rule is Based on Unsound Legal Reasoning*

As many of the majority rule courts have articulated, the *LaRoche/Cambridge* legal analysis is dubious, and is based on a roundly dismissed reading of the Supreme Court's *Katchen v. Landy* opinion. *See, e.g., In re Rhythms Netconnections Inc.*, 300 B.R. at 408–09. *Katchen* interpreted § 57(g) of the Bankruptcy Act of 1898—the precursor to § 502(d)—and considered whether a bankruptcy court could summarily rule on a preference action when a trustee had already objected to a claim under § 57(g). 382 U.S. 323. This analysis does not support the issue here, as the court in *Bridge* noted:

> [T]he issue of whether a debtor who fails to object to a creditor's claim based on §
> 502(d) is precluded from later asserting a preference action against the creditor
> was simply not at issue in *Katchen*. The entire basis of the Supreme Court's
> analysis centers on the relationship between a preference action and the claims
> allowance process when the trustee advances an objection under § 502(d). . . . .
> ***Katchen* does not support the *LaRoche/Cambridge* conclusion that § 502(d)
> extinguishes any preferences against a creditor's claim once that creditor's
> claim is allowed** . . . .

*In re Bridge Info. Sys., Inc.*, 293 B.R. at 488 (emphasis added). After rejecting the

*LaRoche/Cambridge* rationale, the *Bridge* court then went on to hold that the debtor's preference

action was not precluded by § 502 because the debtor had not previously objected to this claim

under the same section. *Id.* at 489. The preference action was a separate, unresolved issue. *See*

*id.* Accordingly, claim preclusion, or re-litigation of issues that the court had already resolved,

was not a concern. *See id.*

Similarly, here, the Debtor and Liquidating Trustee have not, up until now, objected to

Gilbert's proof of claim [Finding of Fact No. 5]—under § 502(d), or any other section—and the

Reserved Avoidance Actions are therefore not re-litigation of prior resolved claims. In fact, the

only objection filed was one by Gilbert—and his objection was to the Plan's confirmation, not

his own proof of claim. He believed that the Plan was giving his claim unfair treatment in order

to secure votes from the Debtor's other creditors. [Finding of Fact No. 7] (citing Gilbert's

argument in his objection). This objection had *nothing* to do with the Reserved Avoidance

Actions.[8] Rather, the Reserved Avoidance Actions were preserved in the Order. [Finding of

Fact No. 20]. Therefore, based on *Bridge*'s holding, allowing the Liquidating Trustee to pursue

the Reserved Avoidance Actions is not a violation of § 502(d). Because no objection was ever

---

[8] This Court made an express finding to this effect in the Memorandum Opinion. *In re Gulf Coast Glass & Erection Co., Inc.*, 2012 WL 2994473, at *4; [Finding of Fact No. 20].

asserted under § 502(d), "that section is simply not at issue and does not bar a subsequent preference action against the creditor." *Bridges*, 293 B.R. at 488 (citations omitted).

ii.  *The* LaRoche/Cambridge *Rule is Based on a Flawed Rationale*

Furthermore, the *LaRoche/Cambridge* rule's legal rationale (i.e., that it is "inequitable" to first settle a creditor's claim and then allow a subsequent preference cause of action) is debatable.  There are reasons that a preference action may be delayed until after the claims resolution process, including practical considerations such as:  (1) creating a viable working relationship between the parties during the plan confirmation process; and (2) waiting until the plan trustee analyzes the preference actions, which may only occur after plan confirmation.  *In re TWA Inc. Post Confirmation Estate*, 305 B.R. at 227–28.  Accordingly, the majority courts have rejected the inflexible *LaRoche/Cambridge* rule requiring that preferences be determined as part of the claims process.  Instead, in their view, § 502(d) merely "preclude[s] entities which have received voidable transfers [such as preferences] from sharing in the distribution of the assets of the estate unless and *until the voidable transfer has been returned to the estate*."  *In re Rhythms Netconnections Inc.*, 300 B.R. at 409 (quoting *In re Mid Atl. Fund, Inc.,* 60 B.R. 604, 609 (Bankr. S.D.N.Y. 1986)) (emphasis added).  Therefore, rather than using § 502 to protect purportedly unsuspecting creditors from allegedly unanticipated preference actions, the majority rule sees § 502 as a means to coerce creditors into complying with judicial orders.  *In re Rhythms Netconnections Inc.*, 300 B.R. at 409.

Consequently, in the suit at bar, § 502 should only be asserted if and when:  (1) this Court actually enters a judgment that the Preferential Transfers are avoidable preferential transfers which must be returned to the Liquidating Trustee; and (2) Gilbert refuses to comply with the judgment.  At that point, the Liquidating Trustee—<u>not</u> Gilbert—could invoke § 502(d) and

17

refuse to pay Gilbert's Allowed Claim of $225,000 until Gilbert first returns the Preferential Transfers.  Otherwise, and as discussed above, § 502 is simply not applicable at this time. *Bridges*, 293 B.R. at 488 (citations omitted).

In sum, this Court adopts the majority view construing § 502(d) and concludes that allowing the Liquidating Trustee to pursue the Reserved Avoidance Actions <u>as well as</u> allowing the Allowed Claim under the Order is not a violation of 11 U.S.C. § 502(d).  Finally, if there is no violation of § 502(d), then contrary to Gilbert's argument, there is no need to unwind the Settlement Agreement and the Plan.  *See* [Finding of Fact No. 22] (citing Gilbert's argument in his response).  Accordingly, the Settlement Agreement, the Plan and the Order all remain in effect.

   3.   <u>The Allowed Claim Amount Was Not Decreased to Account for the Preferential Transfers; thus, Gilbert Received More than He Would Have if the Preferential Transfers Had Not Occurred and a Chapter 7 Petition Had Been Filed.</u>

In his response, Gilbert does not dispute, with one exception, that the Liquidating Trustee has satisfied the elements under § 547(b), including the following: (1) that Gilbert is an insider, as the father of an officer of the Debtor corporation [Finding of Fact No. 2]; (2) that the Preferential Transfers were made from the Debtor's Amegy bank account [Finding of Fact No. 1]; (3) that the Preferential Transfers were for Gilbert's benefit and he was a creditor at the time the Preferential Transfers were made [Finding of Fact No. 1]; (4) that the Preferential Transfers were made on account of an antecedent debt [Finding of Fact No. 3]; (5) that the Preferential Transfers were made within one year before the Debtor's bankruptcy filing [Finding of Fact No. 4]; and finally (6) that the Preferential Transfers were made while the Debtor was insolvent [Finding of Fact No. 3].  *See* [Adv. Doc. No. 34].

If none of these elements are in dispute, then the only potential remaining genuine issue of fact before this Court is the last § 547(b) element:  whether Gilbert received more money as a result of the Preferential Transfers than he would receive if he had not received these transfers and a Chapter 7 petition had been filed.  11 U.S.C. § 547(b)(5).  As discussed below, the Court concludes that Gilbert did indeed receive more than he would under these circumstances.

As Gilbert admits, he is a general unsecured creditor.  [Adv. Doc. No. 34 at p. 1, ¶ 2–3]; [Main Case Claim No. 57].  Under the Order, none of the other general unsecured creditors will receive a 100% distribution.  [Finding of Fact No. 9].  Rather, the Class 4 unsecured creditors are to receive a 75% distribution, the same percentage and treatment that Gilbert will receive on his Allowed Claim.  [*Id.*].   These circumstances suggest therefore that Gilbert would be receiving more than he would receive if the Preferential Transfers had not occurred and Gilbert received a distribution under a hypothetical Chapter 7 case.

Gilbert, however, argues to the contrary.  For him, the issue is:  does the Allowed Claim reflect a reduction in recognition of the Preferential Transfers amount?  If the answer is yes—and Gilbert firmly asserts that the answer is yes—then Gilbert did *not* receive more than he would have if the Preferential Transfers had not occurred and he received a distribution in a hypothetical Chapter 7 case.  The Allowed Claim amount was merely reduced by the Preferential Transfers amount, and therefore, the total that Gilbert received was the same regardless of the Preferential Transfers.

Conversely, if the answer is no, then the Preferential Transfers would be avoidable under § 547(b).  That is, if the Allowed Claim amount was not determined in relation to the Preferential Transfers amount, then the parties did not reduce the Allowed Claim to reflect the funds that Gilbert had already received from the Preferential Transfers.  The sum of the Allowed Claim,

*plus* the Preferential Transfers, would therefore be more than Gilbert would receive if the Preferential Transfers had not occurred and he received a distribution under a hypothetical Chapter 7 case.

In a summary judgment motion, all reasonable inferences should be drawn in favor of the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. at 323. However, here it is simply not reasonable to assume that the Allowed Claim includes a reduction for the Preferential Transfers. First, in the Plan and Order, there is no memorialization of a reduction in the Allowed Claim. [Main Case Doc. No. 399-1]. While the Allowed Claim amount (i.e., of $225,000) is admittedly lower than Gilbert's original proof of claim (i.e., of $447,225) [Finding of Fact Nos. 5 & 9], the Order makes no mention as to *why* the Allowed Claim amount is lower. *See* [Main Case Doc. No. 399-1]. Nothing in the record demonstrates an agreement to lower the Allowed Claim amount to offset the Preferential Transfers.

To the contrary, the Order retains the Liquidating Trustee's right to pursue the Preferential Transfers. [Finding of Fact No. 20]. As this Court found in the Memorandum Opinion, the language preserving the Reserved Avoidance Actions was sufficiently explicit as to meet even the most stringent Fifth Circuit standards.[9] [Adv. Doc. No. 20 at p. 11]. By explicitly retaining the right to pursue the Reserved Avoidance Actions, the Court finds that it would be *unreasonable* to assume that the Order *also* reduced the Allowed Claim amount to reflect the Preferential Transfers. The Preferential Transfers would constitute the majority of any amount at

---

[9] The Fifth Circuit has held that to preserve post-confirmation avoidance actions, the plan must be sufficiently "specific" and "unequivocal" in reserving such claims. *In re United Operating, LLC*, 540 F.3d 351, 354 (5th Cir. 2008). These standards were later clarified by the Fifth Circuit in *In re Texas Wyoming Drilling, Inc.*, 647 F.3d 547, 553 (5th Cir. 2011) and *Compton v. Anderson (In re MPF Holdings US LLC)*, 701 F.3d 449 (5th Cir. 2012). This Court analyzed the language preserving the Reserved Avoidance Actions in the Memorandum Opinion, concluding that it met the "specific" and "unequivocal" standard expressed by this line of case law. *In re Gulf Coast Glass & Erection Co., Inc.*, 2012 WL 2994473, at *6.

issue in the Reserved Avoidance Actions. Why would the parties lower the Allowed Claim by the amount that the Liquidating Trustee is then permitted to pursue in a subsequent preferential avoidance action? Moreover, the difference between the amount of Gilbert's original proof of claim, and the amount of the Allowed Claim is over $200,000. This amount is well beyond the $26,700 of the Preferential Transfers that the Liquidating Trustee is seeking in the suit at bar, *as well as* the $31,216.08 of the Reserved Avoidance Actions. There is no relationship between the Allowed Claim, the Preferential Transfers, or the Reserved Avoidance Actions amounts.

As a result, the Liquidating Trustee has shown that Gilbert received more than he would have in a hypothetical Chapter 7 liquidation where the Preferential Transfers had never been made. Accordingly, there are no genuine issues of material fact regarding the elements of § 547(b).

### E. Gilbert has Failed to Raise Any Genuine Issues of Material Fact

Once the movant in a motion for summary judgment (here, the Liquidating Trustee) establishes the § 547 elements, the non-moving party (here, Gilbert) must then raise a genuine issue of material fact. *Crafts Plus+ v. Foothill Capital Corp. (In re Crafts Plus+)*, 220 B.R. 331, 333 (Bankr. W.D. Tex. 1998) ("[O]nce the moving party has made its motion for summary judgment, the burden effectively shifts to the opposing party to establish a genuine issue of material fact.") (citations omitted); *In re Russell*, Bankr. No. 87–30, 1988 WL 79196, at *2 (Bankr. D. Vt. Apr. 19, 1988). The typical creditor will attempt to show that it received no more than it would have received in a Chapter 7 liquidation if the transfer had not been made. *In re Russell*, 1988 WL 79196, at *2. As discussed above, however, Gilbert has clearly failed to make this showing in his response. He has therefore failed to raise an issue that would constitute a genuine issue of material fact for trial.

IV.    CONCLUSION

For the foregoing reasons, the Liquidating Trustee's Motion for Summary Judgment should be granted.  An Order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

Signed on this the 10th day of January, 2013.

Jeff Bohm
Chief United States Bankruptcy Judge

22